UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK E. TOMPKINS,

                Plaintiff,

                   v.

COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

**17CV1042**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 17 (defendant Commissioner)).

**INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits.

**PROCEDURAL BACKGROUND**

References noted as "[R. __]" are to the certified record of the administrative proceedings, filed with this Court (Docket No. 5).

The plaintiff ("Mark Tompkins" or "plaintiff") filed an application for disability insurance benefits on September 5, 2013 [R. 20]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated June 16, 2016, that the plaintiff was not disabled

within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on August 11, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 16, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 17), and plaintiff duly replied (Docket No. 18), arguing that the ALJ improperly relied upon his lay opinion as opposed to expert medical opinion (id.). This case was scheduled for oral argument and a status conference on January 30, 2019 (Docket No. 19), but due to the failure to enact appropriations, the proceedings were stayed (Docket No. 20). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 50-year-old with a high school education, last worked as a resident supervisor and housekeeper [R. 26]. He contends that he was disabled as of the onset date of March 14, 2012 [R. 20, 22, 28], and was last insured on December 3, 2012 [R. 22, 28]. Thus, the issue here is plaintiff's benefits between March and December 2012. Plaintiff claims the following impairments deemed severe by the ALJ: herniated discs of the lumbar spine, post- laminectomy surgery; depression; left eye injury with reduction in peripheral acuity and depth perception [R. 22].

## MEDICAL AND VOCATIONAL EVIDENCE

Pertinent to the issues in this case, plaintiff complains of back limitations from 2012 [R. 231] and arthritic pain in his hip treated in 2015. Plaintiff had back surgery in 2000 or 2001 and performed substantial gainful activity between 2003 and 2006 (Docket No. 17, Def. Memo.

at 17; [R. 25, 214-20 (plaintiff's earnings), 48 (plaintiff testified surgery occurred in 2000), 67 (testified surgery occurred in 2001)]). On April 20, 2012, plaintiff's MRI reveals disc protrusion at L5-S1, bulges in L4-L5, L2-L3, and L3-L4 (Docket No. 12, Pl. Memo. at 10; [R. 322]). Plaintiff's initial disability report listed lower back pain and arthritis as physical conditions that plaintiff claimed limited his ability to work [R. 231]. In 2015, plaintiff was treated and arthritis was detected in his left hip ([R. 450]; Docket No. 12, Pl. Memo. at 10). Plaintiff noted then that he felt hip pain for several years ([R. 449]; Docket No. 17, Def. Memo. at 14). Plaintiff saw a doctor in October 2, 2015, complaining of left hip and groin pain along with left buttock pain [R. 449]. Plaintiff testified that he fell down stairs two years before the May 17, 2016 hearing, triggering the arthritic hip pain [R. 67].

The ALJ found that plaintiff had a residual functional capacity to perform light work, except he could lift and carry 20 pounds occasionally and 10 pounds frequently could sit for 6 hours per workday; could stand/walk for 4 hours per workday; could frequently climb ramps or stairs; could not climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, and crouch; could not crawl; was limited to jobs that do not require acute peripheral vision or acute depth perception; could not have exposure to hazards such as unprotected heights or moving machinery; was limited to simple, routine tasks that could be learned after a short demonstration or within 30 days; and was limited to occasional interaction with co-workers and the public [R. 24]. The ALJ found that plaintiff could not return to his past relevant work [R. 26]. With this capacity, the vocational expert opined that a claimant like plaintiff could perform such occupations as marker, router, or package inspector [R. 27]. The ALJ concluded that plaintiff was not disabled from March 14 through December 3, 2012 [R. 28].

3

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the

national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala,

5

37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

Evidence bearing upon a claimant's condition after the last date insured (as claimed here) "is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been presented and to have imposed limitations as to the earning requirement date," Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) (internal quotation omitted); Wahl v. Astrue, No. 10CV499, 2012 WL 1676995, at *3-4 (N.D.N.Y. Mar. 23, 2012) (Bianchini, Mag. J.) (Docket No. 12, Pl. Memo. at 11; Docket No. 17, Def. Memo. at 15).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff contends that the ALJ improperly relied upon his lay opinion rather than any medical opinion to support his conclusion (Docket No. 12, Pl. Memo. at 9-14). At Step Two of the five-step analysis, the ALJ deemed plaintiff's claimed hip arthritis not to be severe, relying improperly upon a prior unfavorable decision (id. at 10-11). At Step Three, plaintiff argues that the ALJ then reached the residual functional capacity of light work without the ALJ weighing any medical evidence (id. at 12). Instead, the ALJ relied upon the unfavorable administrative decision prior to the onset date and his own lay interpretation of the medical record (id. at 11-12). Plaintiff argues that evidence bearing upon his condition after

6

the last insured date is pertinent to identify additional impairments that may have been present as of that date (id. at 11).

Defendant Commissioner responds that the ALJ had sufficient evidence to support the finding that plaintiff's hip arthritis was not severe because the evidence did not show impairment in 2015 (Docket No. 17, Def. Memo. at 14). Plaintiff's hearing testimony admitted that his hip injury occurred two years before the 2016 hearing, after the date of last insured (id. at 15; [R. 67]).

I.     Post-Insured Date Medical Claims

As for the hip arthritis, plaintiff documented this impairment in 2015, years after plaintiff was last insured [R. 23]. Defendant disputes the severity of the hip impairment in 2015 (see Docket No. 17, Def. Memo. at 14-15). Defendant also argues that this subsequent evidence fails to show impairment in 2012 (id. at 15-16, citing Vilardi v. Astrue, 447 F. App'x 271, 272 (2d Cir. 2012) (evidence of worsening condition after the date last insured is of little value to establish disability as of that date of last insured).

Plaintiff initially complained of lower back and radiating leg pain in 2012. Sometime in 2014, plaintiff fell and caused injury to his hip, leading to arthritis in the hip that was detected in his treatment in 2015 and he noted in his May 2016 testimony [R. 67, 449-50] (see Docket No. 17, Def. Memo. at 15). Accepting the severity of the hip impairment claimed by plaintiff, raising this in his 2012 claim is out of time. There is no evidence that the arthritic hip from 2014-16 showed limitations on plaintiff's ability to perform in 2012. The 2014 fall is an intervening event. In his own testimony, plaintiff did not claim that his hip was an aggravation of the pain in his lower back. Thus, plaintiff's claim on this ground is **denied**.

II.     ALJ's Lay Interpretation of Medical Record

On the ALJ's findings, plaintiff argues that the medical record only consisted of an MRI, epidural injection reports, and treatment notes from Dr. Yu and Dr. Fiorica [No. 12, Pl. Memo. at 10, 12; R. 278-81, 309, 322, 331-32]. Plaintiff's prior counsel attempted to obtain additional materials without avail [R. 36-37, 64; No. 12, at 12]. The ALJ, instead, relied upon a prior unfavorable decision based on the proximity of plaintiff's onset date and the ALJ's own interpretation of the medical record to make the residual functional capacity assessment (Docket No. 12, Pl. Memo. at 10; [R. 25, 26]). The ALJ did not accord any weight to any medical opinion in this record (Docket No. 12, Pl. Memo. at 10).

At issue is whether the ALJ can rely upon his lay interpretation of medical record. As plaintiff notes (Docket No. 18, Pl. Reply Memo. at 1-2; see Docket No. 12, Pl. Memo. at 10) there is no medical opinion assessing plaintiff's physical impairments in this case. Judge Elizabeth Wolford, in Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016), held that the raw medical data is not enough and an ALJ cannot rely merely upon this data to reach his or her own conclusions about a claimant's limitations. Judge Wolford quoted Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991), and its conclusion that "What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed opinion as to the physical status of a patient," id. No medical opinion at all supports the ALJ's findings here, Dennis, supra, 195 F. Supp. 3d at 474, and it is not a situation where the ALJ is diverting from a given medical opinion. Instead, the ALJ effectively rendered his own opinion from the medical data before him. Thus, **remand is appropriate** and plaintiff's motion on this ground is **granted**.

8

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 12) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 17) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 5, 2019